# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| CADENCE BANK, N.A., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) CASE NO. _____ |
| ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, | ) ) **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) ) |

## NOTICE OF REMOVAL

Defendant Allianz Life Insurance Company of North America ("Allianz") gives notice of removal of this action to the United States District Court for Northern District of Alabama, Southern Division, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. As grounds for removal, Allianz states as follows:

1. Plaintiff Cadence Bank, N.A. ("Cadence") filed this action against Allianz in the Circuit Court of Jefferson County, Alabama, Birmingham Division, on September 21, 2017. Cadence served Allianz's registered agent with process on September 25, 2017. A true and correct copy of the entire state court file, including a copy of the Summons and Complaint that were served on Allianz, is attached hereto as **Exhibit A**.

2. Allianz is filing this Notice of Removal within 30 days of service of the Summons and Complaint, and removal is therefore timely under 28 U.S.C. § 1446(b).

3. This Court has original jurisdiction of this action under 28 U.S.C. § 1332(a) based on diversity of citizenship because this action is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Therefore, removal is proper under 28 U.S.C. § 1441.

### I. Diversity of Citizenship Exists.

4. Plaintiff Cadence is a national banking association with its main office, and its principal place of business, located in Birmingham, Alabama. *See* Compl. ¶ 1. Accordingly, Cadence is a citizen of Alabama for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1348 ("All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located").

5. Defendant Allianz is a Minnesota corporation with its principal place of business in Minnesota. Accordingly, Allianz is a citizen of Minnesota within the meaning of 28 U.S.C. § 1332(c). Allianz is not incorporated in the state of Alabama, and does not maintain its principal place of business in the state of Alabama. Therefore, Allianz is not a citizen of Alabama.

6.      Because Allianz is not a citizen of the State of Alabama, diversity of citizenship is satisfied under 28 U.S.C. § 1332(a).

## II.     The Amount in Controversy Exceeds $75,000.

7.      Cadence asserts three claims against Allianz in its Complaint—breach of contract, conversion, and negligence—arising out of Allianz's alleged wrongful payments of distributions or withdrawals to Samuel Hill out of an annuity that was owned by Hill, but which Hill had assigned to Cadence as partial security for a loan.[1] *See* Complaint (Ex. A) at ¶¶ 3–6, 21–35.  Cadence alleges that Hill's collateral assignment to Cadence granted it the sole right to exercise any and all options with respect to the annuity, and that Allianz could not properly pay funds from the annuity to Hill without Cadence's consent. *Id.* at ¶¶ 10, 11.

8.      Cadence alleges that in December 2014 the value of the annuity was $345,515.59, but that in September 2016, after Hill had defaulted on the Cadence loan, Cadence received only $213,000.00 in proceeds from the annuity as partial payment of the amounts due under the loan. *Id.* at ¶¶ 12, 16, 18.  Cadence alleges that between those two dates, "Allianz wrongfully paid Hill one or more distributions or withdrawals, or paid distributions or withdrawals at Hill's direction," and that, as a result, "the value of the Annuity [was rendered] insufficient to pay all amounts due to Cadence under the Loan . . ." *Id.* at ¶¶ 13,

---

[1] The loan was made by Cadence to The Law Offices of Sam Hill, LLC.  Hill, who is an attorney and member of the Law Offices, personally guaranteed the loan.  Compl. ¶¶ 3, 4, 16.

3

17. The difference between the value of the annuity before Allianz allegedly made the wrongful payments to Hill, and its value afterwards, is $132,515.59 (which is $345,515.59 minus $213,000.00). This is the amount in controversy.

9. Cadence makes no direct reference to that amount in its Complaint, but instead demands only $41,348.92 in its *ad damnum* clauses. *Id.* at pp. 5, 6. Cadence claims that that is the amount of "the unpaid indebtedness of [Hill] *after* Cadence received and applied the remaining funds from the Annuity." *Id.* at ¶ 20 (emphasis added). In other words, Cadence reduces the amount of damages it claims against Allianz by unilaterally applying a set-off in Allianz's favor calculated in terms of amounts it received from Hill.

10. The amount to which Allianz may be entitled as a set-off, however, is irrelevant to the amount in controversy. *See Miedema v. Maytag Corp.*, 450 F.3d 1322, 1332 n.9 (11th Cir. 2006) ("When determining the amount in controversy for jurisdictional purposes, however, courts cannot look past the complaint to the merits of a defense that has not yet been established"); *Black v. State Farm Mut. Auto. Ins. Co.*, No. 10-80996-CIV, 2010 WL 4340281, at *2 (S.D. Fla. Oct. 22, 2010) ("any set-off to which Defendant may be entitled is irrelevant at the jurisdictional stage, as the Court must look at the amount in controversy at the time of removal"); *Reed v. State Farm Mut. Auto. Ins. Co.*, 2007 WL 2230586, at *2 (S.D. Ala. July 30, 2007) (previous settlements or money already paid are "not in

controversy for purposes of determining the jurisdictional amount in this action"); *DeGeorge v. Geico General Ins. Co.*, 6:12-CV-1654-ORL-37, 2012 WL 6212916, at *2 (M.D. Fla. Dec. 13, 2012) ("Setoffs are not properly considered when determining the amount in controversy."); *Gehl v. Direct Transp., Ltd.*, 6:12-CV-1869-ORL, 2013 WL 424300, at *2 (M.D. Fla. Feb. 4, 2013) ("case law instructs that any post-judgment 'set-offs' or collateral source payments are irrelevant to determine the amount in controversy at the jurisdictional stage").

11. Where the plaintiff does not include a specific demand for damages or pleads less than the jurisdictional threshold, the defendant may assert the amount in controversy in the notice of removal, and, if controverted, bears the burden of showing the jurisdictional amount by a preponderance of the evidence. *See Harris v. Aghababaei*, 81 F. Supp.3d 1278, 1280-81 (M.D. Ala. 2015); *Andrews v. Camping World Inc.*, No. 15-00492-CG-N, 2015 WL 7770681, at *2-3 (S.D. Ala. Nov. 16, 2015); *Jefferson v. Hyatt Corp.*, No. 3:14-CV-00601-TBR, 2015 WL 1611834, at *2 (W.D. Ky. Apr. 9, 2015); *Cagle v. C&S Wholesale Grocers, Inc.*, 505 B.R. 534 (E.D. Cal. 2014); *Garcia v. Kellogg USA, Inc.*, No. 7:13-CV-00347, 2013 WL 4735169, at *1 (S.D. Tex. Sept. 3, 2013); *Homoki v. Rivers Edge Tree Stands*, No. 1:12-CV-2926, 2012 WL 6631043, *1 (N.D. Ohio Dec. 19, 2012).

12. Alabama practice does not require a specific demand for damages and permits recovery of damages in excess of the amount demanded. *See* Ala. R. Civ.

P. 54(c). Thus, under 28 U.S.C. § 1446(c)(2)(A), "the notice of removal may assert the amount in controversy."

13. Allianz may satisfy its preponderance of the evidence burden by showing either that it is "'facially apparent' from the [plaintiff's] pleading itself that the amount in controversy exceeds the jurisdictional minimum" or that there is "additional evidence demonstrating that removal is proper." *Roe v. Michelin North American, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010). When determining whether this burden is met, a District Court may "make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable." *Id.* at 1061–62.

14. Here, Cadence pleads only $41,348.92. Upon a full and fair reading of the Complaint, however, the amount in controversy exceeds $75,000 when properly computed without regard to any setoff or collateral source payments to which Allianz may be adjudged to be entitled.

15. The jurisdictional amount in controversy is "an estimate of the amount that will be put at issue in the course of the litigation," and "the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover." *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 913 (11th Cir. 2014).

16. The amount that will be put at issue in the course of this litigation is the $132,515.59 that Allianz allegedly paid to Hill without Cadence's consent in

violation of the annuity contract which had been assigned from Hill to Cadence. *See* Compl. ¶¶ 6–11. Cadence's *ad damnum* amount of $41,348.92, though Allianz disputes that it is liable even for that amount, may be a reasonable characterization by Cadence of "how much [it is] ultimately likely to recover" after taking into consideration potential setoffs to which Allianz may be adjudged to be entitled. That is not the jurisdictional amount in controversy, however.

17. The measure of damages under Alabama law for each of Cadence's three claims against Allianz demonstrates the amount that will be put at issue in the course of this litigation. In a breach of contract action in Alabama, the plaintiff "must allege specific damages that are a natural and proximate consequence of the breach, which are typically a compensatory measure of damages which would place the injured party in the same condition she would have occupied if the contract had not been breached." *Sayer v. Lincoln Nat'l Life Ins. Co*, No. 7:05–CV–1423–RDP, 2006 WL 6253201, at *5 (N.D. Ala. Oct. 12, 2006) (citing *Brendle Fire Equipment, Inc. v. Elec. Eng'rs, Inc.*, 454 So.2d 1032, 1034 (Ala. Civ. App. 1984); *Cobbs v. Fred Burgos Constr. Co.*, 477 So.2d 335, 338 (Ala.1985); *Pyle v. Pizitz*, 215 Ala. 398, 110 So. 822, 826 (Ala.1926)) (internal quotation marks and alterations omitted). The purpose of damages for breach of contract "is to put [the plaintiff] in as good a position as [he] would have been if [the defendant] had not broken the contract." APJI 10.36.

18. The unpublished *Sayer* opinion is instructive because it involved an alleged breach of an annuity contract where the defendant argued, among other things, that the plaintiff had not proven her damages. *Id.* The court in *Sayer* reasoned that, because "Plaintiff received all benefits due her under the Annuity contract, she can specify no amount that would put her in the same position she would have been in had the contract been fully performed. Plaintiff *is* in the position she would have been if the contract had been fully performed by Defendant . . ." *Id.* (emphasis in original) (internal quotation marks and alterations omitted).

19. This equation by the court of "the benefits due under . . . [the] annuity contract" with the "natural and proximate consequence of the breach," illustrates the obvious. The amount at issue in a breach of annuity contract action is the amount of the benefits due to the plaintiff under the annuity contract and allegedly not paid, or wrongfully paid.

20. Here, that amount is $132,515.59, the difference between the value of the annuity in December 2014 ($345,515.59) and the amount that Cadence received in proceeds from the annuity as partial payment of the amounts due under the loan ($213,000.00) as specifically alleged by Cadence in its Complaint.[2]

---

[2] The amount of damages pled by Cadence—the amount of the "unpaid indebtedness" of the loan between Cadence and Hill—is based entirely upon a contract to which Allianz was not a

8

21. The general rule of compensatory damages for negligence is similar to the rule for breach of contract. In tort, as in contract, a party may recover all his damages if they flow directly and naturally from the breach and are not speculative. Jenelle M. Marsh, Alabama Law of Damages §1:2 (6th ed. 2012) (citing *Southern Ry. Co. v. Coleman*, 153 So. 837 (Ala. 1907); *Alabama Power Co. v. Alabama Public Service Commission*, 103 So.2d 14 (Ala. 1958)).

22. Cadence alleges that Allianz's breach of duty "proximately caused harm to Cadence by [1] diminishing the value of Cadence's security interest in the Annuity and [2] depriving Cadence of the sum of $41,348.92 upon default by Law Offices and Hill under the Loan and Hill's guaranty." Compl. ¶ 35 (bracketed numbers added). That allegation includes two separate assertions of damages: (1) the diminution of value of Cadence's security interest in the annuity and (2) the deprivation of the full sum owed to Cadence by Hill. Cadence expressly states only the value of the second, but the value of the first is facially apparent from the remainder of the Complaint. The diminution in "the value of Cadence's security interest in the Annuity" is the amount Allianz allegedly "wrongfully pa[id] from the Annuity," or $132,515.59.

23. Finally, the measure of compensatory damages for conversion under Alabama law is, at least, "the value of the property as of the date of the

---

party. Cadence makes no allegation that Allianz had any obligations under Cadence's loan agreements with Hill.

9

conversion."[3] APJI 39.02; *see also Reliable Mech. Inc. v. Integrated Const. Serv. Inc.*, 781 So.2d 207, 208 (Ala. 2000).

24. Cadence alleges in its Complaint two different dates and two corresponding annuity values—$345,515.59 in December 2014, and $213,000.00 in September 2016—and alleges that, between those dates, "Allianz wrongfully and tortiously distributed funds from the Annuity." Compl. ¶¶ 12, 18, 28. The "amount that will be put at issue in the course of the litigation" includes the full value of the property allegedly converted, which is an amount up to the difference between those two values.

25. The allegations in the complaint establish that the amount in controversy exceeds $75,000.

### III. Venue is Proper in the Northern District.

26. Venue is proper in the United States District Court for the Northern District of Alabama, Southern Division, because it is the district and division embracing the place where the action is currently pending. *See* 28 U.S.C. §§ 1441(a) and 81(a)(3).

27. Promptly after the filing of this Notice of Removal, Allianz will give written notice thereof to Plaintiff and will file a notice, together with a copy of this

---

[3] The jury instruction continues: "or if the property is the type that fluctuates in value the value the property at any time between the date of the conversion and trial, whichever is greater, with interest at the rate of six percent (6%) per annum from the date of conversion." APJI 39.02.

10

Notice of Removal, in the Circuit Court of Jefferson County, Alabama, Birmingham Division, pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, Defendant Allianz hereby removes this action from the Circuit Court of Jefferson County, Alabama, Birmingham Division, to the United States District Court for the Northern District of Alabama, Southern Division.

/s/ Benjamin S. Willson
One of the Attorneys for Allianz Life
Insurance Company of North America

OF COUNSEL:
Michael L. Bell (BEL007)
*mbell@lightfootlaw.com*
Rachel M. Lary (LAR016)
*rlary@lightfootlaw.com*
Benjamin S. Willson (WIL439)
*bwillson@lightfootlaw.com*
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama  35203-3200
(205) 581-0700 (Telephone)
(205) 581-0799 (Facsimile)

## CERTIFICATE OF SERVICE

I certify that I served the foregoing on counsel of record on October 25, 2017 by depositing a copy of same in the United States Mail, postage prepaid, properly addressed to:

Randall D. Quarles, Esq.
Frances P. Quarles, Esq.
Quarles Law Firm, LLC
300 Office Park Drive, Ste. 100
Mountain Brook, AL 35223

/s/ Benjamin S. Willson
Of Counsel