FILED
2017 Oct-25  PM 03:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit A

ELECTRONICALLY FILED
9/21/2017 10:35 AM
01-CV-2017-903973.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev.5/99 | COVER SHEET<br>CIRCUIT COURT - CIVIL CASE<br>(Not For Domestic Relations Cases) | Ca:<br>01<br><br>Date of Filing:<br>09/21/2017 | Judge Code: |
|---|---|---|---|

## GENERAL INFORMATION

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### CADENCE BANK, N.A. v. ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA

First Plaintiff:  ☑ Business  ☐ Individual     First Defendant:  ☑ Business  ☐ Individual
                  ☐ Government ☐ Other                              ☐ Government ☐ Other

---

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☐ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Properly

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Service

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☑ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

---

**ORIGIN:**   F ☑ INITIAL FILING     A ☐ APPEAL FROM DISTRICT COURT     O ☐ OTHER

            R ☐ REMANDED           T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

---

**HAS JURY TRIAL BEEN DEMANDED?**   ☐ YES  ☑ NO     Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

---

**RELIEF REQUESTED:**   ☑ MONETARY AWARD REQUESTED   ☐ NO MONETARY AWARD REQUESTED

---

**ATTORNEY CODE:**

| QUA006 | 9/21/2017 10:35:14 AM<br>Date | /s/ RANDALL D. QUARLES<br>Signature of Attorney/Party filing this form |
|---|---|---|

---

**MEDIATION REQUESTED:**   ☐ YES  ☑ NO  ☐ UNDECIDED

ELECTRONICALLY FILED
10/25/2017 10.35 AM
01-CV-2017-903973.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
## BIRMINGHAM DIVISION

| | | |
|---|---|---|
| CADENCE BANK, N.A., a national banking association, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO.: |
| v. | ) ) ) | |
| ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, a Minnesota insurance corporation doing business in Alabama, | ) ) ) ) ) | _____ |
| Defendant. | ) ) | |

## COMPLAINT

COMES NOW plaintiff Cadence Bank, N.A. ("Cadence"), and for its complaint against defendant Allianz Life Insurance Company of North America ("Allianz") says as follows:

### PARTIES

1.       Cadence is a national banking association with its principal place of business in the city of Birmingham in Jefferson County, Alabama.

2.       Allianz is a Minnesota corporation that is qualified to do business in Alabama and operates by agent in Jefferson County.  The present case relates to an Allianz annuity that was sold to a resident of Jefferson County and which was pledged to Cadence as security for a commercial loan.

### FACTS

3.       Cadence granted a loan (the "Loan") in the principal amount of $225,000.00 to The Law Offices of Sam Hill, LLC ("Law Offices").  The Loan was evidenced by a Promissory Note dated January 22, 2014, and later amendments of the Promissory Note.

4.       Samuel M. Hill ("Hill") is an attorney and a member of Law Offices.

5.     Hill owns an Allianz Vision annuity sold by Allianz (the "Annuity"). Hill purchased the Annuity for $350,000.00.

6.     As partial security for the Loan, Hill granted Cadence a security interest in the Annuity. Hill executed a Commercial Pledge Agreement dated January 22, 2014 (the "Commercial Pledge"). Exhibit A hereto is a true and correct copy of the Commercial Pledge. Hill also executed a Control Agreement and Acknowledgment of Pledge and Security Interest dated January 22, 2014 (the "Control Agreement"). Exhibit B hereto is a true and correct copy of the Control Agreement.

7.     Allianz was informed in writing that Cadence held a security interest in the Annuity. Specifically, Hill sent Allianz a Collateral Assignment of Life or Annuity Contract dated January 24, 2014 (the "Collateral Assignment"). The Collateral Assignment was signed by Hill and a Cadence officer. Exhibit C hereto is a true and correct copy of the Collateral Assignment.

8.     Allianz expressly acknowledged its receipt of the Collateral Assignment. An authorized officer or employee of Allianz signed the "Insurer Acknowledgment" on the last page of the Collateral Assignment and thereby certified: "This Collateral Assignment has been received and recorded on the above referenced Contract/Policy." The Insurer Acknowledgment was dated March 28, 2014.

9.     Allianz also acknowledged the Collateral Assignment with a letter to Hill dated March 28, 2014 (the "Allianz Acknowledgment Letter"). The Allianz Acknowledgment Letter also was sent to Cadence. It was signed on behalf of Allianz by Chet Anderson in "Policy Administration." The letter advised Hill and Cadence as follows: "We have received and recorded the request for Collateral Assignment on the above-referenced policy. Please be advised that we assume no responsibility for the validity of this assignment. The signed assignment form has been forwarded to Cadence Bank, N.A." Exhibit D hereto is a true and correct copy of the Allianz

2

Acknowledgment Letter.

10.     Among other things, the Collateral Assignment granted Cadence the "sole right" to obtain advances or distributions from the Annuity "and to exercise any and all options contained in the [Annuity] with respect thereto."

11.     The Annuity contract expressly permitted the Collateral Assignment and obligated Allianz to comply with the terms of the Collateral Assignment after receiving and recording it. Allianz was aware that, upon Allianz's receipt acknowledgment of the Collateral Assignment, funds from the Annuity could not be properly paid to Hill without Cadence's consent. The "Allianz Vision" contract form that Allianz filed with the Alabama Department of Insurance states as follows, next to the heading "Assignment of this Contract":

> You may assign or transfer all of your ownership rights of this contract. An Authorized Request specifying the terms of an assignment of this contract must be provided to the Service Center and approved by us. We will record your assignment. We will not be responsible for its validity or effect, including tax consequences. We will also not be liable for actions we take or payments we make before we receive and record the assignment.
>
> Any assignment made after the death benefit has become payable will be valid only with our consent. **If you assign this contract, you can exercise your rights only with the written consent of the assignee of record.**

(Emphasis added.)

12.     As of December 31, 2014, the Annuity's value was $345,515.59.

13.     Notwithstanding its receipt and acknowledgment of the Collateral Assignment, Allianz wrongfully paid Hill one or more distributions or withdrawals from the Annuity, or paid distributions or withdrawals at Hill's direction, in violation of the Collateral Assignment, the Commercial Pledge and the Control Agreement.

14.     The distribution or distributions from the Annuity to Hill or at Hill's direction after Allianz received and recorded the Collateral Assignment were made without the consent or

3

knowledge of Cadence.

15.     Law Offices defaulted on the Promissory Note, as amended.

16.     Hill defaulted on his personal guaranty of Law Offices' indebtedness to Cadence.

17.     The wrongful distributions or withdrawals that Allianz paid to Hill or at Hill's direction from the Annuity in violation of the Collateral Assignment rendered the value of the Annuity insufficient to pay all amounts due to Cadence under the Loan and the Promissory Note, as amended.

18.     On September 6, 2016, Cadence received proceeds from the Annuity in the amount of $213,000.00 as partial payment of the amounts due under the Loan and the Promissory Note, as amended.  After application of the proceeds to interest, other charges and the principal due under the Loan, Law Offices and Hill remained indebted to Cadence in the total amount of $41,348.92.

19.     If Allianz had not paid the wrongful distributions or withdrawals to Hill or at his direction, proceeds of the Annuity would have been sufficient to pay all amounts due to Cadence under the Loan and the Promissory Note, as amended.  That was the purpose of the Collateral Assignment that Allianz accepted.

20.     Allianz's wrongful distributions or withdrawals to Hill, or those made at Hill's direction, caused damage to Cadence in the amount of $41,348.92, which was the unpaid indebtedness of Law Offices and Hill after Cadence received and applied the remaining funds from the Annuity.

## COUNT ONE—BREACH OF CONTRACT

21.     Cadence adopts herein by reference the averments of paragraphs 1 through 20 above as if set out here in full.

4

22.     Allianz acknowledged and accepted the Collateral Assignment by which certain rights under the Annuity contract were assigned to Cadence.

23.     Allianz breached the Annuity contract and the Collateral Assignment by making unauthorized distributions or withdrawals to Hill or at Hill's direction in violation of Hill's assignment, even though Allianz had acknowledged the assignment to Cadence of the distribution rights under the Annuity.

24.     To the extent Cadence had duties under the Annuity or the Collateral Assignment, Cadence performed said obligations.

25.     The wrongful and unauthorized payments by Allianz to Hill or at Hill's direction damaged Cadence by diminishing the value of the Annuity, which was collateral for the Loan, and thereby depriving Cadence of its property interest in proceeds of the Annuity equal to the full amount due under the Loan.

WHEREFORE, THE PREMISES CONSIDERED, Cadence demands judgment against Allianz in the amount of $41,348.92, plus applicable prejudgment interest and costs of court. Cadence also requests such further and different relief as the Court may deem just and appropriate.

## COUNT TWO—CONVERSION

26.     Cadence adopts herein by reference the averments of paragraphs 1 through 25 above as if set out here in full.

27.     Under the terms of the Collateral Assignment, Cadence had an ownership interest and/or control of the Annuity and the proceeds thereof.

28.     Allianz wrongfully and tortiously distributed funds from the Annuity by distributing the same to Hill without Cadence's knowledge or consent.

5

29.     Allianz converted funds from the Annuity and unlawfully interfered with Cadence's known security interest in said funds.

30.     Cadence was damaged as a proximate result of Allianz's wrongful payment of Annuity funds.

WHEREFORE, THE PREMISES CONSIDERED, Cadence demands judgment against Allianz in the amount of $41,348.92, plus applicable prejudgment interest and costs of court. Cadence also requests such further and different relief as the Court may deem just and appropriate.

<h2 style="text-align:center">COUNT THREE—NEGLIGENCE</h2>

31.     Cadence adopts herein by reference the averments of paragraphs 1 through 30 above as if set out here in full.

32.     Allianz knew of and accepted Cadence's security interest in the Annuity.

33.     Allianz owed a duty to Cadence to exercise reasonable care to ensure the proper distribution or withdrawal of funds from the Annuity.

34.     Allianz breached its duty to Cadence by wrongfully paying funds from the Annuity to Hill or at Hill's direction without the consent of Cadence.

35.     The breach of duty by Allianz proximately caused harm to Cadence by diminishing the value of Cadence's security interest in the Annuity and depriving Cadence of the sum of $41,348.92 upon the default by Law Offices and Hill under the Loan and Hill's guaranty.

WHEREFORE, THE PREMISES CONSIDERED, Cadence demands judgment against Allianz in the amount of $41,348.92, plus applicable prejudgment interest and costs of court. Cadence also requests such further and different relief as the Court may deem just and appropriate.

/s/ Randall D. Quarles
Randall D. Quarles (QUA006)
An Attorney for Plaintiff Cadence Bank, N.A.

6

**OF COUNSEL:**
Frances P. Quarles (QUA011)
QUARLES LAW FIRM, LLC
300 Office Park Drive
Suite 100
Mountain Brook, AL 35223
Telephone: (205) 874-7000
Telecopier: (205) 874-7002
rquarles@quarleslawfirm.com
fquarles@quarleslawfirm.com


**DEFENDANT TO BE SERVED BY CERTIFIED MAIL, AS FOLLOWS:**

Allianz Life Insurance Company of North America
c/o CT Corporation Systems
2 North Jackson Street
Suite 605
Montgomery, AL 36104

7

ELECTRONICALLY FILED
9/29/2017 10:35 AM
01-CV-2017-903973.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

# EXHIBIT A

## to Complaint

## Cadence Bank, N.A. v. Allianz Life Insurance Company of North America



CADENCE BANK

# COMMERCIAL PLEDGE AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $225,000.00 | 01-22-2014 | 01-21-2015 | [redacted]1242 | ST | | BC6 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** The Law Offices of Sam Hill, LLC
285 Riverchase Parkway East
Birmingham, AL 35244

**Lender:** CADENCE BANK, N.A.
AL - Birmingham Main-Private Banking
2100 Third Avenue North Suite 1100
Birmingham, AL 35203
(205) 326-2265

**Grantor:** Samuel M. Hill
2840 Sadler Ridge Road
McCalla, AL 35111

THIS COMMERCIAL PLEDGE AGREEMENT dated January 22, 2014, is made and executed among Samuel M. Hill ("Grantor"); The Law Offices of Sam Hill, LLC ("Borrower"); and CADENCE BANK, N.A. ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means Grantor's present and future rights, title and interest in and to the following described investment property, together with any and all present and future additions thereto, substitutions therefor, and replacements thereof, and further together with all income and Proceeds as described herein:

Allianz Vision Annuity Account No. [redacted]270 in the name of Samuel M. Hill

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**BORROWER'S WAIVERS AND RESPONSIBILITIES.** Except as otherwise required under this Agreement or by applicable law, (A) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (A) this Agreement is executed at Borrower's request and not at the request of Lender; (B) Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral to Lender; (C) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (D) Lender has made no representation to Grantor about Borrower or Borrower's creditworthiness.

**GRANTOR'S WAIVERS.** Grantor waives all requirements of presentment, protest, demand, and notice of dishonor or non-payment to Borrower or Grantor, or any other party to the Indebtedness or the Collateral. Lender may do any of the following with respect to any obligation of any Borrower, without first obtaining the consent of Grantor: (A) grant any extension of time for any payment, (B) grant any renewal, (C) permit any modification of payment terms or other terms, or (D) exchange or release any Collateral or other security. No such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** Grantor represents and warrants to Lender that:

**Ownership.** Grantor is the lawful owner of the Collateral free and clear of all security interests, liens, encumbrances and claims of others except as disclosed to and accepted by Lender in writing prior to execution of this Agreement.

**Right to Pledge.** Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral.

**Authority; Binding Effect.** Grantor has the full right, power and authority to enter into this Agreement and to grant a security interest in the Collateral to Lender. This Agreement is binding upon Grantor as well as Grantor's successors and assigns, and is legally enforceable in accordance with its terms. The foregoing representations and warranties, and all other representations and warranties contained in this Agreement are and shall be continuing in nature and shall remain in full force and effect until such time as this Agreement is terminated or cancelled as provided herein.

**No Further Assignment.** Grantor has not, and shall not, sell, assign, transfer, encumber or otherwise dispose of any of Grantor's rights in the Collateral except as provided in this Agreement.

**No Defaults.** There are no defaults existing under the Collateral, and there are no offsets or counterclaims to the same. Grantor will strictly and promptly perform each of the terms, conditions, covenants and agreements, if any, contained in the Collateral which are to be performed by Grantor.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. Grantor will promptly notify Lender of any change to Grantor's name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement. Grantor will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for Grantor or any individual for whom Grantor is required to provide notice regarding name changes.

**LENDER'S RIGHTS AND OBLIGATIONS WITH RESPECT TO THE COLLATERAL.** While this Agreement is in effect, Lender may retain possession of the Collateral. This Agreement will remain in effect until (A) there no longer is any Indebtedness owing to Lender; (B) all other obligations secured by this Agreement have been fulfilled; and (C) Grantor, in writing, has requested from Lender a release of this Agreement. Lender shall have the following rights in addition to all other rights Lender may have by law:

**Maintenance and Protection of Collateral.** Lender may, but shall not be obligated to, take such steps as it deems necessary or desirable to protect, maintain, insure, store, or care for the Collateral, including paying of any liens or claims against the Collateral. This may include such things as hiring other people, such as attorneys, appraisers or other experts. Lender may charge Grantor for any cost incurred in so doing. When applicable law provides more than one method of perfection of Lender's security interest, Lender may choose the method(s) to be used.

**Income and Proceeds from the Collateral.** Lender may receive all Income and Proceeds and add it to the Collateral. Grantor agrees to

deliver to Lender immediately upon receipt, in the exact form received and without commingling with other property, all income and Proceeds of Cash. At Lender's option which may be received by, paid, or delivered to Grantor or for Grantor's account, whether as an addition to, in discharge of, in substitution of, or in exchange for any of the Collateral.

**Application of Cash.** At Lender's option, Lender may apply any cash, whether included in the Collateral or received as income and Proceeds or through liquidation, sale, or retirement, of the Collateral, to the satisfaction of the Indebtedness or such portion thereof as Lender shall choose, whether or not matured.

**Transactions with Others.** Lender may (1) extend time for payment or other performance, (2) grant a renewal or change in terms or conditions, or (3) compromise, compound or release any obligation, with any one or more Obligors, endorsers, or Guarantors of the Indebtedness as Lender deems advisable, without obtaining the prior written consent of Grantor, and no such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

**All Collateral Secures Indebtedness.** All Collateral shall be security for the Indebtedness, whether the Collateral is located at one or more offices or branches of Lender. This will be the case whether or not the office or branch where Grantor obtained Grantor's loan knows about the Collateral or relies upon the Collateral as security.

**Collection of Collateral.** Lender at Lender's option may, but need not, collect the income and Proceeds directly from the Obligors. Grantor authorizes and directs the Obligors, if Lender decides to collect the income and Proceeds, to pay and deliver to Lender all income and Proceeds from the Collateral and to accept Lender's receipt for the payments.

**Power of Attorney.** Grantor irrevocably appoints Lender as Grantor's attorney-in-fact, with full power of substitution, (a) to demand, collect, receive, receipt for, sue and recover all income and Proceeds and other sums of money and other property which may now or hereafter become due, owing or payable from the Obligors in accordance with the terms of the Collateral; (b) to execute, sign and endorse any and all instruments, receipts, checks, drafts and warrants issued in payment for the Collateral; (c) to settle or compromise any and all claims arising under the Collateral, and in the place and stead of Grantor, execute and deliver Grantor's release and acquittance for Grantor; (d) to file any claim or claims or to take any action or institute or take part in any proceedings, either in Lender's own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable; and (e) to execute in Grantor's name and to deliver to the Obligors on Grantor's behalf, at the time and in the manner specified by the Collateral, any necessary instruments or documents.

**Perfection of Security Interest.** Upon Lender's request, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral. When applicable law provides more than one method of perfection of Lender's security interest, Lender may choose the method(s) to be used. Upon Lender's request, Grantor will sign and deliver any writings necessary to perfect Lender's security interest. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Borrower may not be indebted to Lender.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note, or the maximum rate permitted by law, whichever is less, from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**LIMITATIONS ON OBLIGATIONS OF LENDER.** Lender shall use ordinary reasonable care in the physical preservation and custody of the Collateral in Lender's possession, but shall have no other obligation to protect the Collateral or its value. In particular, but without limitation, Lender shall have no responsibility for (A) any depreciation in value of the Collateral or for the collection or protection of any income and Proceeds from the Collateral, (B) preservation of rights against parties to the Collateral or against third persons, (C) ascertaining any maturities, calls, conversions, exchanges, offers, tenders, or similar matters relating to any of the Collateral, or (D) informing Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters. Except as provided above, Lender shall have no liability for depreciation or deterioration of the Collateral.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Borrower or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Borrower or Grantor or the dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Upon the occurrence of certain Events of Default, the Indebtedness shall automatically be due and payable as provided in the Note. Upon the occurrence of any other Event of Default, Lender may declare all Indebtedness, including any prepayment penalty which Borrower would be required to pay, immediately due and payable, without notice of any kind to Borrower or Grantor.

**Collect the Collateral.** Collect any of the Collateral and, at Lender's option and to the extent permitted by applicable law, retain possession of the Collateral while suing on the Indebtedness.

**COMMERCIAL PLEDGE AGREEMENT**
(Continued)

**Sell the Collateral.** Sell the Collateral, at Lender's discretion, as a unit or in parcels, at one or more public or private sales. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender shall give or mail to Grantor, and other persons as required by law, notice at least ten (10) days in advance of the time and place of any public sale, or of the time after which any private sale may be made. However, no notice need be provided to any person who, after an Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. Grantor agrees that any requirement of reasonable notice as to Grantor is satisfied if Lender mails notice by ordinary mail addressed to Grantor at the last address Grantor has given Lender in writing. If a public sale is held, there shall be sufficient compliance with all requirements of notice to the public by a single publication in any newspaper of general circulation in the county where the Collateral is located, setting forth the time and place of sale and a brief description of the property to be sold. Lender may be a purchaser at any public sale.

**Sell Securities.** Sell any securities included in the Collateral in a manner consistent with applicable federal and state securities laws. If, because of restrictions under such laws, Lender is unable, or believes Lender is unable, to sell the securities in an open market transaction, Grantor agrees that Lender will have no obligation to delay sale until the securities can be registered. Then Lender may make a private sale to one or more persons or to a restricted group of persons, even though such sale may result in a price that is less favorable than might be obtained in an open market transaction. Such a sale will be considered commercially reasonable. If any securities held as Collateral are "restricted securities" as defined in the Rules of the Securities and Exchange Commission (such as Regulation D or Rule 144) or the rules of state securities departments under state "Blue Sky" laws, or if Grantor or any other owner of the Collateral is an affiliate of the issuer of the securities, Grantor agrees that neither Grantor, nor any member of Grantor's family, nor any other person signing this Agreement will sell or dispose of any securities of such issuer without obtaining Lender's prior written consent.

**Foreclosure.** Maintain a judicial suit for foreclosure and sale of the Collateral.

**Transfer Title.** Effect transfer of title upon sale of all or part of the Collateral. For this purpose, Grantor irrevocably appoints Lender as Grantor's attorney-in-fact to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than one) as shall be necessary or reasonable.

**Other Rights and Remedies.** Have and exercise any or all of the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, at law, in equity, or otherwise.

**Application of Proceeds.** Apply any cash which is part of the Collateral, or which is received from the collection or sale of the Collateral, to reimbursement of any expenses, including any costs for registration of securities, commissions incurred in connection with a sale, attorneys' fees and court costs, whether or not there is a lawsuit and including any fees on appeal, incurred by Lender in connection with the collection and sale of such Collateral and to the payment of the Indebtedness of Borrower to Lender, with any excess funds to be paid to Grantor as the interests of Grantor may appear. Borrower agrees, to the extent permitted by law, to pay any deficiency after application of the proceeds of the Collateral to the Indebtedness.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Alabama without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Alabama.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Jefferson County, State of Alabama.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Pledge Agreement, as this Commercial Pledge Agreement may be amended or

## COMMERCIAL PLEDGE AGREEMENT
(Continued)

| Loan No:  1242 | | Page 4 |

modified from time to time, together with all exhibits and schedules attached to this Commercial Pledge Agreement from time to time.

**Borrower.** The word "Borrower" means The Law Offices of Sam Hill, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Samuel M. Hill.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Income and Proceeds.** The words "Income and Proceeds" mean all present and future income, proceeds, earnings, increases, and substitutions from or for the Collateral of every kind and nature, including without limitation all payments, interest, profits, distributions, benefits, rights, options, warrants, dividends, stock dividends, stock splits, stock rights, regulatory dividends, subscriptions, monies, claims for money due and to become due, proceeds of any insurance on the Collateral, shares of stock of different par value or no par value issued in substitution or exchange for shares included in the Collateral, and all other property Grantor is entitled to receive on account of such Collateral, including accounts, documents, instruments, chattel paper, investment property, and general intangibles.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.  Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means CADENCE BANK, N.A., its successors and assigns.

**Note.** The word "Note" means the Note dated January 22, 2014 and executed by The Law Offices of Sam Hill, LLC in the principal amount of $225,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Obligor.** The word "Obligor" means without limitation any and all persons obligated to pay money or to perform some other act under the Collateral.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**BORROWER AND GRANTOR HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL PLEDGE AGREEMENT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED JANUARY 22, 2014.**

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**GRANTOR:**

X_____ (Seal)
Samuel M. Hill, Individually

**BORROWER:**

THE LAW OFFICES OF SAM HILL, LLC

By:_____ (Seal)
Samuel M. Hill, Administrating Member of The Law Offices of Sam Hill, LLC

**LENDER:**

CADENCE BANK, N.A.

By:_____ (Seal)
Authorized Signer

ELECTRONICALLY FILED
9/29/2017 10:35 AM
01-CV-2017-903973.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

# EXHIBIT B

## to Complaint

## Cadence Bank, N.A. v. Allianz Life Insurance Company of North America



CADENCE
BANK

# CONTROL AGREEMENT AND ACKNOWLEDGMENT OF PLEDGE AND SECURITY INTEREST

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $225,000.00 | 01-22-2014 | 01-21-2015 | [redacted]1242 | ST | | BC5 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Grantor:** The Law Offices of Sam Hill, LLC
265 Riverchase Parkway East
Birmingham, AL 35244

**Lender:** CADENCE BANK, N.A.
AL - Birmingham Main-Private Banking
2100 Third Avenue North Suite 1100
Birmingham, AL 35203
(205) 326-2265

**TO:**

Allianz Vision
Attn: William O. Scroggins
P. O. Box 561
Minneapolis, MN 55440-0561

**DATE:** 01-22-2014

## NOTICE TO ISSUER

**RE:** **Security Owner:** The Law Offices of Sam Hill, LLC
**Account Maintained by:** Allianz Vision
**Account Number:** [redacted]8270
**Description of Security:** Allianz Vision Annuity No. [redacted]28270 in the name of Samuel M. Hill; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing.

**DEAR MADAM OR SIR:**

This is to notify you that pursuant to a Pledge Agreement signed by The Law Offices of Sam Hill, LLC (the "Owner(s)"), CADENCE BANK, N.A. ("Lender") has been granted a security interest in the above described security or securities (the "Securities"), for which you are the issuer. You are hereby notified of Lender's security interest, including the provision that the Securities, including all dividends in stock, stock splits and other proceeds are not to be paid to anyone other than to Lender until and unless you receive further written notice from Lender. Any regular cash dividends may be paid to the Owner(s), subject to further instructions from Lender as provided below. This pledge will remain in full force and effect until Lender notifies you in writing to the contrary. Please acknowledge receipt of this notice by signing and returning the attached control agreement and acknowledgment to Lender. This notice is dated January 22, 2014.

**ACCOUNT OWNER AUTHORIZATION:**

THE LAW OFFICES OF SAM HILL, LLC

By: *Samuel M. Hill* (Seal)
Samuel M. Hill, Administrating Member
of The Law Offices of Sam Hill, LLC

**ACKNOWLEDGMENT OF PLEDGE AND SECURITY INTEREST**
(Continued)

Loan No: 4691242                                                                                                    Page 2

## CONTROL AGREEMENT AND ACKNOWLEDGMENT OF PLEDGE AND SECURITY INTEREST

We acknowledge receipt on _____, 20___ of the above notice of Lender's security interest in the above-described Securities, and we will mark our records, by book-entry or otherwise, to indicate the pledge of, and Lender's security interest in, the Securities. To the best of our knowledge, and except for Lender's security interest or as noted below, and as of the date hereof (a) the Securities are identified on our books and records, by book-entry or otherwise, as being owned by The Law Offices of Sam Hill, LLC; (b) we have identified on our books and records the Securities as being pledged to CADENCE BANK, N.A.; (c) we have not confirmed any interest in the Securities to any persons other than to the Owner(s) and Lender; (d) our records do not indicate any adverse claims concerning the Securities nor do they indicate any person, other than Owner(s) and Lender, as having any interest in the Securities; (e) we have not created, nor have we received notice of any liens, claims or encumbrances with respect to the Securities, except to Lender; (f) we agree not to effect any transfer of the Owner(s)' interest in any of the Securities without Lender's prior written consent; (g) should we receive further written notice from Lender, we will hold the Securities and all dividends, distributions, and other proceeds relating to the Securities (whether in cash, securities or other property) subject to Lender's written instructions. We will comply with all written instructions originated by Lender concerning the Securities without further consent by the Owner(s).

Exceptions: _____

_____

( Details of exceptions – if none, please state "None" )

**Allianz Vision**

By: _____ See Allianz doa _____ (Seal)
                    (Authorized Signer)

RETURN TO:

> CADENCE BANK, N.A.
> 3500 Colonnade Parkway, Suite 600
> Birmingham, AL 35243

ELECTRONICALLY FILED
8/21/2017 10 35 AM
01-CV-2017-903973.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

# EXHIBIT C

## to Complaint

## Cadence Bank, N.A. v. Allianz Life Insurance Company of North America

03/13/2014 THU 11:42 FAX   ☑001/005

Fax# 1-800-721-3208          Faxed to Allianz 1/27/14

## Collateral Assignment of Life or Annuity Contract

Contract/Policy Owner Name: _Samuel M. Hill_

Contract/Policy Number: _____ _270_

Assignee's Name: _CADENCE BANK_

Insurance Company Name: _Allianz_

For Value Received, the Contract/Policy Owner listed above ("Owner") hereby assigns, transfers and sets over to the Assignee listed above ("Assignee") the Contract/Policy referenced above and issued by the Insurance Company designated above ("Insurer"). This assignment includes any supplementary contracts or amendments issued in connection with the Contract/Policy together with all claims, options, privileges, rights, title, and interest therein and thereunder (except as provided in part herein) subject to all terms and conditions of the Contract/Policy and to all superior liens, if any, which the Insurer may have against the Contract/Policy. The Owner(s) by this instrument jointly and severally agree, and the Assignee by the acceptance of this assignment agrees, to the conditions and provisions herein set forth.

**Rights Granted:**

It is expressly agreed that, without detracting from the generality of the foregoing, the following specific rights are included in this assignment and pass by virtue hereof:

- The sole right to collect from the Insurer the net proceeds of the Contract/Policy when it becomes a claim by death or maturity;
- The sole right to surrender the Contract/Policy and receive the surrender value thereof at any time provided by the terms of the Contract/Policy and of such other times as the Insurer may allow;
- The sole right to obtain one or more loans or advances on the Contract/Policy as provided for in the Contract/Policy for purposes of paying any required premium on the Contract/Policy;
- The sole right to collect and receive all distributions and to exercise any and all options contained in the Contract/Policy with respect thereto; and
- The sole right to exercise all nonforfeiture rights permitted by the terms of the Contract/Policy or allowed by the Insurer and to receive all benefits and advantages derived therefrom.

**Rights Excluded:**

It is expressly agreed that the following specific rights, so long as the Contract/Policy has not been surrendered, are reserved and excluded from this assignment and do not pass by virtue hereof:

- The right to collect from the Insurer any disability benefit payable in cash that does not reduce the amount of insurance;
- The right to designate and change the beneficiary;
- The right to transfer amounts among any of the investment options available under the Contract/Policy;
- The right to elect any optional mode of settlement permitted by the Contract/Policy or allowed by the Insurer; but the reservation of these rights shall in no way impair the right of the Assignee to surrender the Contract/Policy completely with all its incidents or impair any other right of the Assignee hereunder, and any designation or change of beneficiary or election of a mode of settlement shall be made subject to this assignment and to the rights of the Assignee hereunder.

1

03/13/2014 THU 11:43   FAX                                                                                      ☒002/005

## Liabilities to be Secured

This assignment is made and the Contract/Policy is to be held as collateral security for any and all liabilities of the Owner(s), or any of them, to the Assignee, either now existing or that may hereafter arise in the ordinary course of business between any of the Owner(s) and the Assignee (all of which liabilities secured or to become secured are herein called "Liabilities").

## Covenants

The Assignee covenants and agrees with the Owner(s) as follows:

- That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the Contract/Policy had this assignment not been executed;
- That the Assignee will not exercise either the right to surrender the Contract/Policy or (except for the purpose of paying premiums) the right to obtain policy loans from the Insurer, until there has been default in any of the Liabilities or a failure to pay any premium when due, nor until twenty days after the Assignee shall have mailed, by first-class mail, to the undersigned at the addresses last supplied in writing to the Assignee specifically referring to this assignment, notice of intention to exercise such rights; and
- That the Assignee will, upon request and without unreasonable delay, forward to the Insurer the Contract/Policy for endorsement of any designation or change of beneficiary or any election of an optional mode of settlement.

## Insurer's Responsibility and Discharge

The Insurer is hereby authorized to recognize the Assignee's claims to rights hereunder without investigating the reason for any action taken by the Assignee or the validity or the amount of the Liabilities or the existence of any default therein, or the giving of any notice of any amount to be paid to the Assignee. The sole signature of Assignee shall be sufficient for the exercise of any rights under the Contract/Policy assigned hereby and the sole receipt of the Assignee for any sums received shall be a full discharge and release therefore to the Insurer. Checks of all or any part of the sums payable under the Contract/Policy and assigned herein shall be drawn to the exclusive order of the Assignee if, when, and in such amounts as may be, requested by the Assignee.

## Premium Payments

The Assignee shall be under no obligation to pay any premium, or the principal of or interest on any loans or advances on the Contract/Policy whether or not obtained by the Assignee, or any other charges on the Contract/Policy, but any such amounts so paid by the Assignee from its own funds shall become a part of the Liabilities hereby secured, shall be due immediately, and may draw interest at a rate fixed by the Assignee.

## Assignee's Exercise of Rights

The exercise of any right, option, privilege, or power given herein to the Assignee shall be at the option of the Assignee, but (except as restricted herein, including the Covenants Section above) the Assignee may exercise any right, option, privilege, or power without notice to or assent by the Owner(s), without affecting the liability of the Owner(s) and without releasing any interest hereby assigned by the Owner(s).

**General Provisions**

- In the event of any conflict between the provisions of this assignment and the provisions of the note or other evidence of any Liability, with respect to the Contract/Policy or rights of collateral securities therein, the provisions of this Assignment shall prevail.
- The Owner(s) declares that no proceedings in bankruptcy are pending against him/her and that this Contract/Policy is not subject to any assignment for the benefit of creditors
- Important Notice -Annuity Contract Owners: Under IRC Section 72(e), the value of any amounts assigned or pledged as collateral may be subject to taxation. Thus, the action the Owner is taking hereunder may subject the Owner to a taxable event.

**Signature of Owner**

| Samuel M. Hill | _[signature]_ | 1/24/14 |
|---|---|---|
| Name of Owner | Signature of Owner | Date |
| Name of Jt. Owner (if applicable) | Signature of Joint Owner | Date |
| Name of Irrevocable Beneficiary (if applicable) | Signature of Irrevocable Beneficiary | Date |

**Signature of Assignee**

| CADENCE BANK NA | _[signature]_ SVP | 1-24-14 |
|---|---|---|
| Name of Assignee | Signature and title | Date |
| 2100 3rd Ave North | BIRMINGHAM, AZ | 35203 |
| Address    STE 1100 | City and State | Zip Code |

**Insurer Acknowledgment**

This Collateral Assignment has been received and recorded on the above referenced Contract/Policy.

Name of Insurer: _Allianz Life Ins Co_

Signature: _[signature]_    Date: _3-28-14_

3

ELECTRONICALLY FILED
5/21/2017 10:35 AM
01-CV-2017-903973.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

# EXHIBIT D

## to Complaint

## Cadence Bank, N.A. v. Allianz Life Insurance Company of North America

Allianz Life Insurance Company
of North America
PO Box 59060
Minneapolis, MN 55459-0060
Telephone: 800/950-1962



March 28, 2014

SAMUEL M HILL
2540 SADLER RIDGE RD
MCCALLA, AL 35111-3331

Re: Allianz Policy Number:      270
    Annuitant: Samuel M. Hill

Dear Mr. Hill:

We have received and recorded the request for Collateral Assignment on the
above referenced policy. Please be advised that we assume no responsibility for
the validity of this assignment. The signed assignment form has been forwarded
to Cadence Bank, N.A.

**Please be aware IRS guidelines state that a collaterally assigned annuity
does not get tax-deferred status. If the policy has a taxable gain over the
cost basis at the end of the year, you will receive a 1099R reflecting any
gain each year until the assignment is released.**

Thank you for your continued business. We appreciate the opportunity to be of
service to you.

Sincerely,

Chet Anderson
Policy Administration

C: CADENCE BANK NA

ELECTRONICALLY FILED
5/23/2017 10:35 AM
01-CV-2017-903973.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
## BIRMINGHAM DIVISION

| | | |
|---|---|---|
| **CADENCE BANK, N.A., a national banking association,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.:** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ALLIANZ LIFE INSURANCE COM-PANY OF NORTH AMERICA, a Min-nesota insurance corporation doing busi-ness in Alabama,** | ) | _____ |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

### PLAINTIFF'S FIRST INTERROGATORIES TO DEFENDANT

Plaintiff Cadence Bank, N.A. ("Cadence"), pursuant to Rule 33 of the Alabama Rules of Civil Procedure, propounds the following interrogatories on the defendant. Cadence requests that the defendant answer these interrogatories under oath and serve the answers upon the undersigned counsel for Cadence within the time provided by Rule 33.

### DEFINITIONS

A.    "Plaintiff" and "Cadence" refer to the plaintiff in this action, Cadence Bank, N.A.

B.    "Defendant" and "Allianz" refer to defendant Allianz Life Insurance Company of North America and its officers, agents, attorneys, and employees, and also any experts whom Allianz expects to call as witnesses at trial or any other proceeding in this action, and any other people who have access to the information requested from whom Allianz can obtain such information.

C.    "Hill" refers to Samuel M. Hill.

D.    The "Annuity" refers to the Allianz Vision deferred variable annuity, contract number DAV28270, issued to Hill on or about February 7, 2012.

E.      The "Collateral Assignment" refers to the Collateral Assignment of Life or Annuity Contract executed by Hill on or about January 24, 2014, and acknowledged by Allianz on or about March 28, 2014.

F.      The "Complaint" refers to the Complaint filed in this action on behalf of Cadence.

G.      "Communication" shall mean all oral conversations, discussions, letters, telegrams, memoranda, and any other transmission of information in any form, both oral and written.

H.      The term "or" should not be read to eliminate any part of a request or as permitting the option of responding to only part of an interrogatory.  Wherever applicable, the term "or" should be read as having the same meaning as the word "and."

I.      "Identify," "Identity" -

(1)     When used in reference to an individual, shall mean a person's full name, home address, business occupation, business address, business title or occupation, and present and past relationship to any party;

(2)     When used in reference to a document, shall mean the title of any document, its author, its date or the date it was prepared, its location, and the identity of the document's custodian;

(3)     When used in reference to a corporation, shall mean to state its full name, its state of incorporation, its principal place of business, and its business address;

(4)     When used in reference to a partnership, shall mean to state its full name, the names of each partner, and its principal place of business;

(5)     When used in reference to a person other than an individual, corporation or partnership, shall mean to state its official name, its organizational form and its address;

2

(6)     When used in reference to an act, shall mean to state the time and place of the act, the nature of the act, the name of the person or persons performing or joining in the act, and the names of all persons witnessing or having knowledge of such act.

J.     "Document" is used herein in its broadest possible sense as set forth in Rule 34 of the Alabama Rules of Civil Procedure and shall mean any written, printed, typed, recorded, or other graphic matter of any kind or nature; all mechanical and electrical sound recordings and any transcripts thereof; and all computer data files, which are in the possession, custody and/or control of Allianz, or to which Allianz has access; it includes, without limitation, agreements, audio or videotapes, bills, bills of lading, bookkeeping entries, calculations, canceled checks, charts, communications, computer printouts, contracts, correspondence, data, diagrams, drawings, electronic mail or data files, field notes, files, findings of investigations, graphs, invoices, ledger sheets, letters, maps, memoranda or summaries or notes or other records of telephone or personal conversations or meetings, notes and memoranda, notices, office memoranda, orders, personal memoranda, plans, purchase orders, receipts, records, records of negotiation, reports including drafts, reports of consultants, reports of experts, sampling and test results, sketches, slides or photographs, specifications, statements of witnesses, studies, summaries, surveys, telegrams, telephone records, test results, vouchers, waybills and work papers.  This definition of "document" includes, without limitation, all preliminary drafts of documents, all marginal or other notes on documents or copies thereof, all file folders and all labels or markings indicating the manner in which the documents have been maintained.

## INSTRUCTIONS

If a privilege not to answer an interrogatory is claimed, identify each matter as to which the privilege is claimed, the nature of the privilege, and the legal and factual basis for each such

3

claim of privilege.

If a refusal to answer is stated on the ground of burdensomeness, identify the documents needed to be searched and the location of the documents, and identify each person or entity that must be consulted.

Answer each interrogatory on the basis of your entire knowledge, including information in the possession of your employees, consultants, attorneys, representatives and agents.

If any interrogatory cannot be answered in full, then answer to the greatest extent possible, and specify all reasons for your inability to answer completely.

## INTERROGATORIES

1.     Identify all persons answering these interrogatories or providing information for the answers.

ANSWER:

2.     Identify all persons who have knowledge of any of the matters alleged in the Complaint, and for each such person, state the substance of the facts of which he or she has knowledge, and provide his or her last known home address and telephone number.

ANSWER:

3.     Identify all documents that that Allianz believes support its defenses in this action.

ANSWER:

4

4.      Identify each and every expert witness whom Allianz expects to call at the trial of this matter or from whom Allianz expects to obtain testimony for any other purpose in this action, stating with respect to each such witness the following:

(1)      The name, residential address and telephone number of the expert witness;

(2)      The qualifications of the expert witness;

(3)      The occupation, title (if any), and business address and telephone number of the expert witness;

(4)      The subject matter on which the expert witness is expected to testify;

(5)      The substance of the facts and opinions to which the expert witness is expected to testify;

(6)      Each and every book, treatise, pamphlet, reference, or other document upon which the expert witness relied in reaching his or her opinion.

ANSWER:

5.      Identify each and every witness from whom Allianz expects to elicit expert opinion testimony at the trial of this matter or for any other purpose in this action, other than the expert witnesses identified in your response to preceding interrogatory, and for each such witness state the substance of the expected testimony.

ANSWER:

5

6.      Are you aware of any recorded or written statements concerning matters related to this action made by any person, including experts?  If so, (a) provide the name, residential and business address, and telephone number of each such person; (b) state the date of each such statement, and (c) state whether each such statement was oral, written or otherwise recorded.

ANSWER:

7.      Identify each and every person, other than Allianz's attorneys, with whom Allianz has discussed this action or the allegations in the Complaint, and for each such discussion, state the date, time and duration of the discussion, the method of communication, and the contents of the discussion, and identify all documents that evidence or reflect the discussion.

ANSWER:

8.      Describe in detail each and every communication during the period from March 28, 2014, to the present between Allianz and Hill about the Annuity, the Collateral Assignment, or any matter or event averred in the Complaint, including in your answer the date, time, location, approximate duration and mode of each such communication (for example, telephone call, letter, personal meeting), and identifying all documents that evidence or reflect each such communication.

ANSWER:

9.      Describe in detail each and every communication between Allianz and Cadence about the Annuity, the Collateral Assignment, or any matter or event averred in the Complaint, including in your answer the date, time, location, approximate duration and mode of each such communication (for example, telephone call, letter, personal meeting), and identifying all documents that evidence or reflect each such communication.

ANSWER:

10.     Describe in detail each and every communication during the period from March 28, 2014, to the present between Allianz and any person or entity other than Hill or Cadence about the Annuity, the Collateral Assignment, or any matter or event averred in the Complaint, including in your answer the date, time, location, approximate duration and mode of each such communication (for example, telephone call, letter, personal meeting), and identifying all documents that evidence or reflect each such communication.

ANSWER:

11.     Identify and describe in detail Allianz's policies, procedures or practices that were in effect at any time during the period from March 28, 2014, to the present regarding payments, distributions, withdrawals or transfers from an Allianz Vision annuity after Allianz has received and recorded a collateral assignment of the annuity, and identify all documents that state or memorialize the policies, procedures or practices.

7

ANSWER:

12.     State in detail all facts in Allianz's knowledge concerning the Collateral Assign-

ment, and identify any and all documents and things that evidence or reflect the Collateral Assign-

ment or Allianz's acknowledgment and recording of the same.

ANSWER:

13.     Did Allianz receive and record the Collateral Assignment?  If your answer is in the

affirmative, state with specificity the date and circumstances of Allianz's receipt of the Collateral

Assignment and any action that Allianz took after receipt of the Collateral Assignment, including,

but not limited to, what Allianz did to "record" the Collateral Assignment within the meaning of

the term "record" as it is used in the Annuity contract.

ANSWER:

14.     Does Allianz contend that funds from the Annuity were properly paid to Hill in

compliance with any applicable Allianz policies and procedures after Allianz received and rec-

orded the Collateral Assignment?  If your answer is in the affirmative, state all facts and identify

all documents and things that Allianz believes prove or indicate that funds were properly paid from

the Annuity, or which you believe otherwise support your answer.

ANSWER:

15.     Identify any and all persons who participated in any decision or action by Allianz to pay funds from the Annuity to Hill without first confirming the knowledge and consent of Cadence regarding such a payment after Allianz received and recorded the Collateral Assignment.

ANSWER:


16.     List each and every payment, distribution, withdrawal or transfer of funds from the Annuity after March 28, 2014,  including for each such event the date, identify of the person or persons receiving the funds, and identify each and every person who approved or authorized the payment, distribution, withdrawal or transfer.

ANSWER:


17.     State the full name, present contact information, present employment status, and Allianz job position and responsibilities in March, 2014, of Chet Anderson, whose name appears on the March 28, 2014, letter that is Exhibit D to the Complaint.

ANSWER:


18.     Does Allianz contend that it is not liable for any funds paid to Hill from the Annuity without Cadence's knowledge and consent after Allianz received and recorded the Collateral Assignment?  If Allianz contends that it is not liable, state all facts and circumstances that you believe establish that Allianz is not liable for such a payment or payments.

9

ANSWER:


19.     Does Allianz dispute any of the damages alleged by Cadence in the Complaint?  If your answer is in the affirmative, state in detail all alleged facts or grounds that Allianz believes support Allianz's position in any such dispute, and identify any and all documents and things that Allianz believes support its position.

ANSWER:


/s/ Randall D. Quarles
Randall D. Quarles (QUA006)
An Attorney for Plaintiff, Cadence Bank, N.A.

**OF COUNSEL:**
Frances P. Quarles (QUA011)
QUARLES LAW FIRM, LLC
300 Office Park Drive
Suite 100
Mountain Brook, AL 35223
Telephone: (205) 874-7000
Telecopier: (205) 874-7002
rquarles@quarleslawfirm.com
fquarles@quarleslawfirm.com


## TO BE SERVED ON DEFENDANT WITH SUMMONS AND COMPLAINT

ELECTRONICALLY FILED
3/29/2017 10:35 AM
01-CV-2017-903973.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
## BIRMINGHAM DIVISION

| | | |
|---|---|---|
| CADENCE BANK, N.A., a national banking association, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO.: |
| v. | ) ) ) | |
| ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, a Minnesota insurance corporation doing business in Alabama, | ) ) ) ) ) | _____ |
| Defendant. | ) ) | |

## PLAINTIFF'S FIRST REQUEST TO DEFENDANT
## FOR PRODUCTION OF DOCUMENTS AND THINGS

Plaintiff Cadence Bank, N.A. ("Cadence"), hereby requests pursuant to Alabama Rule of Civil Procedure 34 that the defendant produce and permit inspection and copying of the documents described below within the time permitted by Rule 34 at the office of QUARLES LAW FIRM, LLC, 300 Office Park Drive, Suite 100, Mountain Brook, AL 35223.

## DEFINITIONS

A.    "Plaintiff" and "Cadence" refer to the plaintiff in this action, Cadence Bank, N.A.

B.    "Defendant" and "Allianz" refer to defendant Allianz Life Insurance Company of North America and its officers, agents, attorneys, and employees, and also any experts whom Allianz expects to call as witnesses at trial or any other proceeding in this action, and any other people who have access to the information requested from whom Allianz can obtain such information.

D.    "Hill" refers to Samuel M. Hill.

C.    The "Annuity" refers to the Allianz Vision deferred variable annuity, contract number DAV28270, issued to Hill on or about February 7, 2012.

D.    The "Collateral Assignment" refers to the Collateral Assignment of Life or Annuity Contract executed by Hill on or about January 24, 2014, and acknowledged by Allianz on or about March 28, 2014.

E.    The "Complaint" refers to the Complaint filed in this action on behalf of Cadence.

F.    "Communication" shall mean all oral conversations, discussions, letters, telegrams, memoranda, and any other transmission of information in any form, both oral and written.

G.    The term "or" should not be read to eliminate any part of a request or as permitting the option of responding to only part of a request.  Wherever applicable, the term "or" should be read as having the same meaning as the word "and."

H.    "Identify," "Identity" -

(1)    When used in reference to an individual, shall mean a person's full name, home address, business occupation, business address, business title or occupation, and present and past relationship to any party;

(2)    When used in reference to a document, shall mean the title of any document, its author, its date or the date it was prepared, its location, and the identity of the document's custodian;

(3)    When used in reference to a corporation, shall mean to state its full name, its state of incorporation, its principal place of business, and its business address;

(4)    When used in reference to a partnership, shall mean to state its full name, the names of each partner, and its principal place of business;

(5)    When used in reference to a person other than an individual, corporation or partnership, shall mean to state its official name, its organizational form and its address;

2

(6)     When used in reference to an act, shall mean to state the time and place of the act, the nature of the act, the name of the person or persons performing or joining in the act, and the names of all persons witnessing or having knowledge of such act.

I.     "Document" is used herein in its broadest possible sense as set forth in Rule 34 of the Alabama Rules of Civil Procedure and shall mean any written, printed, typed, recorded, or other graphic matter of any kind or nature; all mechanical and electrical sound recordings and any transcripts thereof; and all computer data files, which are in the possession, custody and/or control of Allianz, or to which Allianz has access; it includes, without limitation, agreements, audio or videotapes, bills, bills of lading, bookkeeping entries, calculations, canceled checks, charts, communications, computer printouts, contracts, correspondence, data, diagrams, drawings, electronic mail or data files, field notes, files, findings of investigations, graphs, invoices, ledger sheets, letters, maps, memoranda or summaries or notes or other records of telephone or personal conversations or meetings, notes and memoranda, notices, office memoranda, orders, personal memoranda, plans, purchase orders, receipts, records, records of negotiation, reports including drafts, reports of consultants, reports of experts, sampling and test results, sketches, slides or photographs, specifications, statements of witnesses, studies, summaries, surveys, telegrams, telephone records, test results, vouchers, waybills and work papers. This definition of "document" includes, without limitation, all preliminary drafts of documents, all marginal or other notes on documents or copies thereof, all file folders and all labels or markings indicating the manner in which the documents have been maintained.

## INSTRUCTIONS

If a privilege not to produce is claimed, provide a privilege log that identifies each document as to which the privilege is claimed, the nature of the privilege, and the legal and factual basis

3

for each such claim of privilege.

If a refusal to produce is stated on the grounds of burdensomeness, identify the documents needed to be searched and the location of the documents, and identify each person or entity that must be consulted.

## DOCUMENTS AND THINGS REQUESTED

1.      Any and all documents and things of any kind evidencing, reflecting, relating to or otherwise pertaining to the matters alleged in the Complaint.

2.      Any and all documents and things of any kind evidencing, reflecting, relating to or otherwise pertaining to the Collateral Assignment.

3.      Any and all documents and things of any kind evidencing, reflecting, relating to or otherwise pertaining to Hill's assignment or transfer of rights regarding the Annuity.

4.      Any and all documents and things of any kind evidencing, reflecting, relating to or otherwise pertaining to payments, distributions, withdrawals or transfers to Hill or at Hill's direction from the Annuity.

5.      Any and all documents and things of any kind evidencing, reflecting, relating to or otherwise pertaining to payments, distributions, withdrawals or transfers to Cadence from the Annuity.

6.      Any and all documents and things of any kind evidencing, reflecting, relating to or otherwise pertaining to payments, distributions, withdrawals or transfers from the Annuity to any person or entity other than Cadence or Hill.

7.      Any and all documents evidencing or reflecting communications between Allianz, or any officer, employee, agent or attorney of Allianz, and Cadence, or any officer, employee, agent or attorney of Cadence, pertaining to the Annuity.

4

8.      Any and all written or recorded statements by any person pertaining to the Collateral Assignment, the Annuity or any matters or events alleged in the Complaint, including, but not necessarily limited to, any affidavits, transcripts of oral statements, and audio or video recordings.

9.      Any and all written policies, procedures, manuals, guidelines or instructions of Allianz in effect at any time during the period from March 28, 2014, to the present pertaining to collateral assignments or other assignments of annuities.

10.     Any and all documents of any kind evidencing the approval or authorization by or from any person or entity for payments, distributions, withdrawals or transfers from the Annuity that occurred after March 28, 2014.

11.     Any and all documents that identify persons with knowledge of the matters averred in the Complaint.

12.     Any and all documents identified in your answers to Plaintiff's First Interrogatories to Defendant, which are being served contemporaneously herewith.

> /s/ Randall D. Quarles
> Randall D. Quarles (QUA006)
> An Attorney for Plaintiff, Cadence Bank, N.A.

**OF COUNSEL:**
Frances P. Quarles (QUA011)
QUARLES LAW FIRM, LLC
300 Office Park Drive
Suite 100
Mountain Brook, AL 35223
Telephone: (205) 874-7000
Telecopier: (205) 874-7002
rquarles@quarleslawfirm.com
fquarles@quarleslawfirm.com

**TO BE SERVED ON DEFENDANT WITH SUMMONS AND COMPLAINT**

ELECTRONICALLY FILED
9/29/2017 10:35 AM
01-CV-2017-903973.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
## BIRMINGHAM DIVISION

| | | |
|---|---|---|
| **CADENCE BANK, N.A.,** a national banking association, | ) ) ) | |
| **Plaintiff,** | ) ) | **CIVIL ACTION NO.:** |
| **v.** | ) ) ) | |
| **ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA,** a Minnesota insurance corporation doing business in Alabama, | ) ) ) ) ) | _____ |
| **Defendant.** | ) ) | |

## PLAINTIFF'S FIRST REQUESTS TO DEFENDANT
## FOR ADMISSIONS

Plaintiff Cadence Bank, N.A. ("Cadence"), hereby requests pursuant to Alabama Rule of Civil Procedure 36 that the defendant Allianz Life Insurance Company of North America ("Allianz"), admit the truth of the matters stated below under the heading, "Requested Admissions."

## DEFINITIONS

A.   "Plaintiff" and "Cadence" refer to the plaintiff in this action, Cadence Bank, N.A.

B.   "Defendant" and "Allianz" refer to defendant Allianz Life Insurance Company of North America.

D.   "Hill" refers to Samuel M. Hill.

C.   The "Annuity" refers to the Allianz Vision deferred variable annuity, contract number DAV28270, issued to Hill on or about February 7, 2012.

E.   The "Collateral Assignment" refers to the Collateral Assignment of Life or Annuity Contract executed by Hill on or about January 24, 2014, and acknowledged by Allianz on or about March 28, 2014.

F.      The "March 2014 Letter" refers to the letter dated March 28, 2014, from Chet Anderson with Allianz to Samuel M. Hill regarding the Annuity.

G.      The "Complaint" refers to the Complaint filed in this action on behalf of Cadence.

### REQUESTED ADMISSIONS

1.      Exhibit C to the Complaint is a true, correct and authentic copy of the Collateral Assignment.

2.      Exhibit D to the Complaint is a true, correct and authentic copy of the March 2014 Letter.

3.      Chet Anderson possessed authority as an agent or employee of Allianz to send the March 2014 Letter on behalf of Allianz.

4.      The statement in the March 2014 Letter, "We have received and recorded the request for Collateral Assignment on the above referenced policy," is correct.

5.      The Collateral Assignment was permitted under the Annuity.

6.       Cadence became the assignee of record when Allianz received and recorded the Collateral Assignment.

7.      Upon Allianz's receipt and recording of the Collateral Assignment, Hill should have been permitted by Allianz to receive or direct payments, distributions, withdrawals or transfers from the Annuity only with the written consent of Cadence.

8.      Pursuant to the Collateral Assignment, Cadence possessed the sole right to obtain advances or distributions from the Annuity and to exercise any and all options contained in the Annuity with respect thereto.

9.      Allianz made one or more payments, distributions or transfers from the Annuity to Hill or at Hill's direction after March 28, 2014, without receiving a written consent or authorization from Cadence.

10.     As of December 31, 2014, the Annuity's value was $345,515.59.

11.     On September 6, 2016, Cadence received proceeds from the Annuity in the amount of $213,000.00 pursuant to the Collateral Assignment.

12.     The Collateral Assignment was on a form produced and provided to Hill or Cadence by Allianz.

13.     On one or more occasions after March 28, 2014, Allianz paid, distributed or transferred funds from the annuity without the consent of Cadence and contrary to the terms of the Collateral Assignment.

14.     On one or more occasions after March 28, 2014, Allianz paid, distributed or transferred funds from the Annuity without the consent of Cadence and contrary to the assignment provisions of the Annuity.

15.     On one or more occasions after March 28, 2014, Allianz paid, distributed or transferred funds from the Annuity without the consent of Cadence and contrary to the policies, procedures or practices of Allianz pertaining to collateral assignments of Allianz Vision annuities.


/s/ Randall D. Quarles
Randall D. Quarles (QUA006)
An Attorney for Plaintiff, Cadence Bank, N.A.

**OF COUNSEL:**
Frances P. Quarles (QUA011)
QUARLES LAW FIRM, LLC
300 Office Park Drive
Suite 100
Mountain Brook, AL 35223
Telephone: (205) 874-7000
Telecopier: (205) 874-7002
rquarles@quarleslawfirm.com
fquarles@quarleslawfirm.com


**TO BE SERVED ON DEFENDANT WITH SUMMONS AND COMPLAINT**

3



**AlaFile E-Notice**

01-CV-2017-903973.00

To:  RANDALL D. QUARLES
     rquarles@quarleslawfirm.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

CADENCE BANK, N.A. V. ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA
01-CV-2017-903973.00

The following complaint was FILED on 9/21/2017 10:35:25 AM

Notice Date:      9/21/2017 10:35:25 AM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
anne-marie.adams@alacourt.gov



AlaFile E-Notice

01-CV-2017-903973.00

To: ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA
C/O CT CORPORATION SYSTEM
2 NORTH JACKSON ST., #605
MONTGOMERY, AL, 36104

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

CADENCE BANK, N.A. V. ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA
01-CV-2017-903973.00

The following complaint was FILED on 9/21/2017 10:35:25 AM

Notice Date:      9/21/2017 10:35:25 AM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
anne-marie.adams@alacourt.gov

| State of Alabama<br>Unified Judicial System<br>Form C-34  Rev. 4/2017 | **SUMMONS**<br>**- CIVIL -** | **Court Case Number**<br>01-CV-2017-903973.00 |
|---|---|---|

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### CADENCE BANK, N.A. V. ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA

**NOTICE TO:** ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, C/O CT CORPORATION SYSTEM 2 NORTH JACKSON ST., #605, MONTGOMERY, AL 36104

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), RANDALL D. QUARLES

*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: 300 Office Park Drive, Suite 100, Mountain Brook, AL 35223

*[Address(es) of Plaintiff(s) or Attorney(s)]*

THE ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request of CADENCE BANK, N.A.
*[Name(s)]*
pursuant to the Alabama Rules of the Civil Procedure.

| 9/21/2017 10:35:25 AM | /s/ ANNE-MARIE ADAMS | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.     /s/ RANDALL D. QUARLES
*(Plaintiff's/Attorney's Signature)*

## RETURN ON SERVICE

☐ Return receipt of certified mail received in this office on _____
*(Date)*

☐ I certify that I personally delivered a copy of this Summons and Complaint or other document to _____

_____ in _____ County,
*(Name of Person Served)*          *(Name of County)*

Alabama on _____.
*(Date)*

_____          _____
*(Type of Process Server)*          *(Address of Server)*

_____          _____
*(Server's Signature)*          *(Phone Number of Server)*

_____
*(Server's Printed Name)*

ELECTRONICALLY FILED
9/21/2017 2:16 PM
01-CV-2017-903973.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### BIRMINGHAM DIVISION

| | | |
|---|---|---|
| **CADENCE BANK, N.A., a national banking association,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.:** |
| | ) | |
| **v.** | ) | **01-CV-2017-903973.00** |
| | ) | |
| **ALLIANZ LIFE INSURANCE COM-PANY OF NORTH AMERICA, a Min-nesota insurance corporation doing busi-ness in Alabama,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## AFFIDAVIT BY PLAINTIFF'S COUNSEL OF CERTIFIED MAILING OF PROCESS, COMPLAINT AND DISCOVERY

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF JEFFERSON | ) |

Before me, the undersigned notary public in and for said County and State, personally appeared Randall D. Quarles, who, being first duly sworn, says and deposes as follows:

1.     My name is Randall D. Quarles. I am over the age of nineteen years. I am an attorney of record for plaintiff Cadence Bank, N.A., in the above-styled civil action. This affidavit is given on the basis of my personal knowledge.

2.     I hereby verify that filed copies of the process and Complaint, Plaintiff's First Interrogatories to Defendant, Plaintiff's First Request to Defendant for Production of Documents and Things, and Plaintiff's First Requests to Defendant for Admissions were mailed September 21, 2017, by certified mail in accordance with Alabama Rule of Civil Procedure 4(i)(2)(B)(ii) by placing a copy of said process and filed pleading and discovery documents in an envelope addressed to the registered agent for service of process for the defendant, Allianz Life Insurance

Company of North America, as follows:

> Allianz Life Insurance Company of North America
> c/o CT Corporation Systems
> 2 North Jackson Street
> Suite 605
> Montgomery, AL 36104

I affixed adequate postage on said envelope and placed the sealed envelope in the United

States mail as certified mail with instructions to forward, return receipt requested, with instructions

to the delivering postal employee to show to whom delivered, date of delivery, and address where

delivered, and with the return receipt addressed to the clerk of this Court and identifying the case

number of this case.  The article number for the certified mail card is 7017 1450 0001 0001 4522.

Attached hereto are copies of the completed card and mail receipt.

Further affiant saith not.

**Randall D. Quarles**

STATE OF ALABAMA          )
                          )
COUNTY OF JEFFERSON       )

Before me, the undersigned Notary Public in and for said County in said State, personally
appeared **Randall D. Quarles,** and who by me being first duly sworn, deposes and says on oath
that he has read the aforesaid Affidavit by Defendants' Counsel of Certified Mailing of Process,
Complaint and Discovery; that the statements therein are true; and that he is herewith voluntarily
signing said Affidavit in my presence.

Sworn to and subscribed before me, this 21st day of September, 2017.

LESLEY COMEAU
Notary Public
Alabama State at Large
NOTARIAL SEAL

Notary Public
My commission expires: Commission Expires September 25,2019

2

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

box®

**The Hon. Anne-Marie Adams**
**Jefferson County Circuit Clerk**
**Jefferson County Courthouse, Room 400**
**716 Richard Arrington, Jr. Blvd. N.**
**Birmingham, AL 35203**

USPS TRACKING#

01-CV-2017-903973.00

9590 9403 0175 5120 9423 46

---

01-CV-2017-903973.00

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Allianz Life Insurance Company of
North America
c/o CT Corporation Systems
2 North Jackson Street, Suite 605
Montgomery, AL 36104

9590 9403 0175 5120 9423 46

2. Article Number (Transfer from service label)

7017 1450 0001 0001 4522

PS Form 3811, April 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (Printed Name)       C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

MONTGOMERY AL 36104

OFFICIAL USE

| Certified Mail Fee | $3.35 | | 0260 |
| $ | $2.75 | | 01 |

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $ $0.00
☐ Return Receipt (electronic)      $ $0.00
☐ Certified Mail Restricted Delivery $ $0.00
☐ Adult Signature Required         $ $0.00
☐ Adult Signature Restricted Delivery $

Postage     $2.45

Total Postage and Fees     $8.55

Sent To  Allianz Life Ins. Co. of N. Am. 702-2298 Corp. Systems
Street and Apt. No., or PO Box No.  2 North Jackson St, Ste 605
City, State, ZIP+4®  Montgomery, AL 36104

PS Form 3800, April 2015 PSN 7530-02-000-9047     See Reverse for Instructions

MAIN BROOK postmark Here

SEP 21 2017
09/21/2017



**AlaFile E-Notice**

01-CV-2017-903973.00

To:  RANDALL D. QUARLES
     rquarles@quarleslawfirm.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

CADENCE BANK, N.A. V. ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA
01-CV-2017-903973.00

The following AFFIDAVIT OF CERTIFIED MAILING OF PROCESS AND COMPLAINT
was FILED on 9/21/2017 2:16:12 PM

Notice Date:     9/21/2017 2:16:12 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
anne-marie.adams@alacourt.gov



**AlaFile E-Notice**

01-CV-2017-903973.00

To: ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA (PR(
C/O CT CORPORATION SYSTEM
2 NORTH JACKSON ST., #605
MONTGOMERY, AL, 36104-0000

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

CADENCE BANK, N.A. V. ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA
01-CV-2017-903973.00

The following AFFIDAVIT OF CERTIFIED MAILING OF PROCESS AND COMPLAINT
was FILED on 9/21/2017 2:16:12 PM

Notice Date:     9/21/2017 2:16:12 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
anne-marie.adams@alacourt.gov



**AlaFile E-Notice**

01-CV-2017-903973.00

To:  QUARLES FRANCES PARKER
fquarles@quarleslawfirm.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

CADENCE BANK, N.A. V. ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA
01-CV-2017-903973.00

The following AFFIDAVIT OF CERTIFIED MAILING OF PROCESS AND COMPLAINT
was FILED on 9/21/2017 2:16:12 PM

Notice Date:       9/21/2017 2:16:12 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
anne-marie.adams@alacourt.gov



**AlaFile E-Notice**

01-CV-2017-903973.00

To:  RANDALL D. QUARLES
     rquarles@quarleslawfirm.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

CADENCE BANK, N.A. V. ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA
01-CV-2017-903973.00

The following AFFIDAVIT OF CERTIFIED MAILING OF PROCESS AND COMPLAINT
was FILED on 9/21/2017 2:16:12 PM

Notice Date:     9/21/2017 2:16:12 PM

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
anne-marie.adams@alacourt.gov

01-CV-2017-903973.00

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

■ Complete items 1, 2, and 3.

■ Print your name and address on the reverse so that we can return the card to you.

■ Attach this card to the back of the mailpiece, or on the front if space permits.

**A. Signature**

X *Laura McHann*  ☐ Agent  ☐ Addressee

**B. Received by (Printed Name)**   **C. Date of Delivery**  9/25/17

**1. Article Addressed to:**

Allianz Life Insurance Company of
North America
c/o CT Corporation Systems
2 North Jackson Street, Suite 605
Montgomery, AL 36104

**D. Is delivery address different from Item 1?** ☐ Yes
If YES, enter delivery address below: ☐ No



9590 9403 0175 5120 9423 46

**3. Service Type**
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ _____ Mail
☐ _____ Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation
☐ Signature Confirmation Restricted Delivery

**2. Article Number (transfer from service label)**

7017 1450 0001 0001 4522

PS Form 3811, April 2015 PSN 7530-02-000-9053        Domestic Return Receipt



UNITED STATES POSTAL SERVICE

28 SEP '17

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

The Hon. Anne-Marie Adams

Jefferson County Circuit Clerk

Jefferson County Courthouse, Room 400

716 Richard Arrington, Jr. Blvd. N.

Birmingham, AL 35203

FILED IN OFFICE
CIRCUIT CIVIL DIVISION
OCT 02 2017
ANNE-MARIE ADAMS
CLERK

01-CV-2017-903973

USPS TRACKING#

9590 9403 0175 5120 9423 46



AlaFile E-Notice

01-CV-2017-903973.00

Judge: CAROLE C. SMITHERMAN

To:  QUARLES RANDALL DEAN
     rquarles@quarleslawfirm.com

# NOTICE OF SERVICE

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

CADENCE BANK, N.A. V. ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA
01-CV-2017-903973.00

The following matter was served on 9/25/2017

**D001 ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA**
**Corresponding To**
AUTHORIZED SERVICE

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
anne-marie.adams@alacourt.gov



**AlaFile E-Notice**

01-CV-2017-903973.00

Judge: CAROLE C. SMITHERMAN

To: QUARLES FRANCES PARKER
fquarles@quarleslawfirm.com

---

# NOTICE OF SERVICE

---

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

CADENCE BANK, N.A. V. ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA
01-CV-2017-903973.00

The following matter was served on 9/25/2017

**D001 ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA**

**Corresponding To**

AUTHORIZED SERVICE

ANNE-MARIE ADAMS
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
anne-marie.adams@alacourt.gov